UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANTONIO DARNELL MAYS,

    Plaintiff,

v.                                                         **Case No. 18-CV-1769**

**TRACY JOHNSON,**

    Defendant.

**ORDER**

*Pro se* plaintiff Antonio Mays filed this lawsuit under 42 U.S.C. § 1983. United States District Judge Pamela Pepper screened the amended complaint and allowed Mays to proceed with a claim that defendant Tracy Johnson revoked his extended supervision twice based on the same rule violations. The parties subsequently consented to the jurisdiction of a magistrate judge. The parties have filed cross-motions for summary judgment which have been fully briefed and are ready for resolution.

*Undisputed Facts*

The relevant facts are undisputed. (*See* ECF Nos. 26, 31, 33.) Mays is a Wisconsin state prisoner who has been in and out of custody. (ECF No. 26, ¶¶ 1, 3.) In 2003 Mays was convicted of armed robbery with use of force and sentenced to an initial term of ten years in prison, to be followed by ten years of extended supervision. (ECF No. 31, ¶ 4.) On January 3, 2012, Mays was released to community supervision.

(*Id.*, ¶ 5.) Johnson was Mays's probation and parole agent between July 2013 and September 2018. (ECF No. 31, ¶¶ 1-3; ECF No. 26, ¶ 5.)

As a condition of his release Mays signed Rules of Supervision in which he agreed to "[a]void all conduct which is in violation of federal or state statute, municipal or county ordinances, tribal law or which is not in the best interest of the public welfare or [his] rehabilitation. (ECF No. 31, ¶ 6.) Mays also agreed to "[p]rovide true, accurate, and complete information in response to inquiries by DOC staff"; "[i]nform [his] agent of [his] whereabouts and activities as he/she directs"; and not possess, own, or carry a firearm without his agent's permission. (*Id.*, ¶ 7.)

On or around March 15, 2018, there was a double homicide at a house in Milwaukee. (ECF No. 31, ¶¶ 8-9.) Witnesses at the scene reported that Brandon Jones (Mays's cousin) was playing dice at the house when a heavy-set black man wearing a jean jacket forced his way into the house and began shooting. (*Id.*, ¶¶ 10-13.) Someone at the house shot back and wounded the shooter. (*Id.*, ¶14.) Investigators collected evidence at the crime scene, including DNA samples, three casings from a .45 caliber firearm, and one casing from a 9mm firearm. (*Id.*, ¶11.)

Police officers talked to Jones following the shooting. (ECF No. 31, ¶¶ 15-16.) Jones said that he had called Mays to the house after losing money in a dice game. (*Id.*, ¶ 15.) Jones saw Mays enter the house. (*Id.*) Gunshots rang out. (*Id.*) Jones then saw Mays running away from the house with two guns and gunshot wounds. (*Id.*) Jones told officers that he drove Mays to the hospital and Mays disposed of the weapons on the way there. (*Id.*, ¶ 16.)

2

Case 2:18-cv-01769-WED   Filed 08/20/20   Page 2 of 9   Document 38

Mays was admitted to a hospital in Milwaukee with gunshot wounds to his head and back. (ECF No. 31, ¶ 8.) Mays matched the description of the shooter and police officers found a jean jacket in his hospital room. (*Id.*, ¶ 10.) Mays denied any involvement in the housing shooting. (*Id.*, ¶ 17.) He told police officers that he was a victim of an attempted robbery at a nearby gas station. (*Id.*) Officers found no evidence of a shooting at a gas station that day. (*Id.*, ¶ 18.)

Later on March 15, 2018, Johnson received a phone call from the Milwaukee County Police Department notifying her that Mays had been admitted to the hospital with gunshot wounds. (ECF No. 32, ¶ 11.) She interviewed Mays and asked him to provide a written statement. (*Id.*, ¶ 19.) Mays admitted that he was at the location of the shooting with Jones. (*Id.*, ¶ 20.) He said that he initially told police he was not involved in the incident because he didn't want Johnson to find out he was engaging in negative behavior. (*Id.*, ¶ 21.) Mays explained that he was sitting in a car outside of the house waiting for Jones. (*Id.*, ¶ 22.) Mays got tired of waiting and went inside to get Jones. (*Id.*) As Mays and Jones were walking out of the house together, Mays was shot. (*Id.*) Mays denied having (or shooting) a firearm. (*Id.*, ¶ 23.)

Several days later, on March 26, 2018, the police executed a search warrant at Mays's prior residence. (ECF No. 31, ¶ 24.) They recovered seven firearms, including a .45 caliber firearm and a 9mm firearm. (*Id.*, ¶ 25.) Testing showed that the casings found at the crime scene matched the firearms found in the residence. (*Id.*, ¶ 26.)

Based on this evidence, Johnson decided to initiate revocation proceedings. (ECF No. 31, ¶¶ 27, 30.) She identified four Rules of Supervision that Mays violated

3

and took Mays into custody on a "revocation hold." (*Id.*) Two days later, on March 28, 2018, the Milwaukee County District Attorney charged Mays criminally with two counts of first-degree reckless homicide and two counts of felon in possession of a firearm. (*Id.*, ¶¶ 28-29.) The criminal charges were amended later to felony murder and first-degree reckless homicide and two counts of felon in possession of a firearm. (*Id.*, ¶ 29.)

On June 11, 2018, the Division of Hearings and Appeals held a hearing on the revocation request. (ECF No. 31, ¶ 31.) Following the hearing, an administrative law judge (ALJ) concluded that the Department of Corrections proved rule violation number three (providing a false statement to police) but could not prove rule violation numbers one, two, and four (having and shooting a firearm at the crime scene). (*Id.*, ¶ 32.) The ALJ denied the request to revoke Mays's extended supervision because providing a false statement to police did not alone warrant revocation. (*Id.*)

Johnson appealed the decision, which was sustained on July 27, 2018. (ECF No. 31, ¶¶ 33-34.) Johnson then cancelled the "revocation hold" effective July 31, 2018. (*Id.*, ¶ 35.) Mays nevertheless remained in custody because he still had criminal charges pending against him for the double homicide. (*Id.*, ¶ 36.)

On August 16, 2019, Johnson received DNA results from the State Crime Lab tying Mays to the double homicide. (ECF No. 31, ¶ 38.) DNA found on two of the weapons used in the double homicide matched Mays's profile. (*Id.*) Based on this new evidence, Johnson filed a motion to reopen Mays's revocation proceeding on August 29, 2018. (*Id.*, ¶ 39.) While the motion to reopen was pending, Mays posted bail on

4

the double homicide charges and was released from custody on September 19, 2018. (*Id*., ¶37.) Mays then "temporarily" received a new probation and parole agent, Bryan Balde. (ECF No. 33, ¶ 5.)

On October 3, 2018, the Division of Hearings and Appeals granted Johnson's motion to reopen Mays's revocation proceeding. (ECF No. 31, ¶ 40.) The case went back to the original ALJ for further proceedings. (*Id*.) Johnson and her superiors decided to take Mays back into custody pending the new revocation proceeding. (*Id*., ¶ 41.) Mays was returned to custody on October 8, 2018. (*Id*., ¶ 42.) About 11 days later, on October 19, 2018, a jury convicted Mays of all counts in his criminal case. (*Id*., ¶ 44.) Johnson then requested to withdraw the motion to reopen revocation proceedings based on the DNA evidence in order to initiate a new revocation proceeding based on the jury conviction. (*Id*., ¶ 46.) The Division granted the request. (*Id*., ¶ 48.)

On October 29, 2018, Johnson filed a new revocation proceeding identifying the same four rule violations but now with the homicide conviction. (ECF No. 31, ¶¶ 50-52.) An ALJ found that Mays violated rules one, two, and four. (*Id*., ¶ 54.) The ALJ dismissed rule violation three because it had been fully litigated in the original revocation proceeding. (*Id*.)

The ALJ revoked Mays's extended supervision and remanded him to state prison for 10 years and 5 days with custody credit for the time he spent in jail during the revocation proceedings. (ECF No. 31, ¶ 55.) Mays appealed the decision, challenging only the length of confinement. (Id. ¶ 56.) The Administrator affirmed on

February 5, 2019. (*Id.*, ¶ 57.) The Administrator signed a Revocation Order and Warrant remanding Mays to state prison, giving Mays full credit for the time spent in jail from the date of his re-arrest on October 8, 2018, until his arrival in prison on February 13, 2019. (*Id.*, ¶¶ 58-61.)

*Summary Judgment Standard*

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). When considering a motion for summary judgment, the court takes evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

*Analysis*

Mays seeks monetary damages for the 11 days he served in jail prior to his criminal conviction in the double homicide (between October 8, 2018 and October 19, 2018). Mays says he was "out on bail" for the double homicide and Johnson should have allowed him to remain out of custody until his criminal trial. Instead, Johnson took Mays back into custody on October 8, 2018, following the Division's decision to grant her motion to reopen his revocation proceeding.

"Probation and parole officials are entitled to absolute immunity 'for their activities that are analogous to those performed by judges.'" *Tobey v. Chibucos*, 890

6

Case 2:18-cv-01769-WED    Filed 08/20/20    Page 6 of 9    Document 38

F.3d 634, 650 (7th Cir. 2018) (quoting *Dawson v. Newman*, 419 F.3d 656, 662 (7th Cir. 2005)); *see also Smith v. Gomez*, 550 F.3d 613, 619 (7th Cir. 2008). While quasi-judicial immunity does not extend to the day-to-day duties in the supervision of a parolee or investigating and gathering evidence for revocation, parole officials are immune from any federal claims for "acts associated with the decision to grant, revoke, or deny parole." *Dawson*, 419 F.3d at 662. The Court of Appeals for the Seventh Circuit has extended that immunity "to those activities that are part and parcel of the decision process" to deny, grant, or revoke parole. *Thompson v. Duke*, 882 F.2d 1180, 1183 n.3 (7th Cir. 1989).

While Johnson was involved in supervising and investigating Mays's extended supervision violations, Mays's complaint with Johnson stems from her decision to recommend revoking his extended supervision and incarcerating him. In conducting the latter two tasks, Johnson was engaged in a quasi-judicial function for which she is protected by absolute immunity. *See e.g. Weso v. Thomson*, No. 19-C-404, 2020 WL 3509612, at *3 (E.D. Wis. June 29, 2020) (dismissing a claim at summary judgment based on absolute immunity because the defendant "did not simply investigate [the plaintiff's] offending conduct and submit report on his findings; he recommended that [the plaintiff's] extended supervision be revoked and that he be incarcerated"); *see also Griffin v. Laurie Bondar, Cathy Coulson, Denise Tuttle*, No. 20-CV-380-JPS, 2020 WL 3546814, at *3 (E.D. Wis. June 30, 2020) (dismissing a claim at screening because two parole agents' decision to recommend revoking extended supervision was "sufficiently adjudicative in nature" to by protected by prosecutorial immunity.).

7

Accordingly, the court will grant the defendant's motion for summary judgment, deny Mays's motion for summary judgment, and dismiss this case. *See* 28 U.S.C. 1915(e)(2)(B)(iii)("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that…the action...seeks monetary relief against a defendant who is immune from such relief.")

**IT IS THEREFORE ORDERED** that Mays's motion for summary judgment (ECF No. 23) is **DENIED**; the defendant's motion for summary judgment (ECF No. 29) is **GRANTED** and this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time,

generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 20th day of August, 2020.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge